Good morning. May it please the court. My name is James Park. I'm here on behalf of Christian Gaybor, who is currently serving a 17-year sentence for the two counts that he's been convicted of. He came to the United States when he was 12 years old from Ecuador to make a new life and to seek medical treatment. Up until this offense, he had led a law-abiding life and for greed, probably to summarize it best, that he got involved in this armored car robbery. He was the inside guy. What is unusual about this case is after his convictions were affirmed and he went back for resentencing, up until that point he had denied any involvement in the offense. But once he realized his convictions were final and that wasn't the end, he fessed up. He made peace with his family and he asked he basically accepted his role in the act and he said it as much to the district judge. We did not ask for post-conviction acceptance responsibility. And probably in hindsight, in light of Booker, we might have tried to shoot for that responsibility. Instead, at the time that the case was being sentenced, the impact of Booker was being felt and we weren't sure how it was going to get resolved and whether even the standard practice of doing motion for downward departures was the right avenue to pursue into getting a sentence. In lieu of that, we chose to ask for a, under 3553 factors, ask for a 10-year sentence. That was the bottom line sentence that we were asking for. Is there still, does Rule 35 still have any meaning at all? Can you move within a year of the conviction? If Mr. Gabor is in a position to provide information to the government, Rule 35 will still be applicable in this case. I believe so. He, unfortunately, does not have any the only information he could provide is where the money is. I was just going to say, he doesn't know where the money is. Unfortunately, he knows, and we've passed the information as best as we know. We know that the two co-defendants were the last ones to keep it, and the ringleader, we call him the ringleader, Michael Moussa, he probably had the best access to it. There's approximately of the $1.2 million that were taken, $600,000 still missing, and Mr. Gabor would love to provide the information to get a Rule 35. I think Rule 35 would be an equitable way to get back in front of Judge McAmey for resentencing. In light of what he benefited versus what the others got. Michael Moussa got a seven-year sentence for cooperating, and he also got the biggest take of the financial, the robbery. Your client got the smallest take? I believe he was being watched. I guess it goes a little bit away from the appellate issues that are up here, but he was being watched because he was a primary suspect. He was the first one arrested, and there was a reward out for his arrest. I believe he was paid, Mr. Batista probably knows this better, I was not the trial lawyer, I believe he was paid approximately $20,000 to $30,000, and I believe he used that for his trial lawyer's fees, and that's all he got. And in the end, he eventually got nothing, and it was a 24-year-old guy looking at a substantial sentence. I mean, if he's lucky with good time, he'll get out when he's about 38, 38 and a half. And that's a, I mean, I'm over 40 now, I mean, it's not too bad. Young fellow. Just a young fellow. He'll be a young fellow. He'll be a young fellow too, but I think when you're 23, 24 years old, 40 seems like a long stretch down the road. But despite the But his problem was he didn't accept responsibility soon enough, right? That is correct. He just, he had, I think it goes back to his personal traits and personal relation with his maternal grandfather and his mother that he could not He couldn't face his family. He couldn't face his family. So as a result, he wasn't willing to plead and cooperate with the government to testify against the people that are obviously more heavily involved. That is correct. And, but again, remarkably, you don't see this often when people who go to trial, they always maintain their innocence. He came to terms that he accepted his role. And in order to get to the 10-year sentence, because the guideline calculates does impact Mr. Gabor's sentence, we objected to certain relevant factors that we thought we had legitimate basis for, and that's what the appeal is substantially about. And that had to deal with the bodily injury enhancement for, that was suffered to the, his partner at the time, Mr. Hutchinson. And the only basis that the district judge found him to be for the bodily injury enhancement was a scratch, a laceration in the back of the head. I believe it was on the left side. And it was either for a blow from either a gun or a hand. That was what that was. We also say his wrist was sore for a year. His wrists were bound. It was tied behind the back. And I believe Mr. Hutchinson told the probation officer that the, he may had numbness in his thumb, one of the thumbs for approximately a year. Assuming that is the case, the district judge did not use those factors. What the district judge used was the scratch to the back of the head. And it was, and what it goes back to, if you would look at the whole thing, if that was the basis, the wrist, maybe we would have had another basis for objecting. That that injury may have been accounted for by the restraint or by the abduction enhancements that we could have had a double dipping argument. But we were not able to make, we never made that argument, objection, because we felt that was not going to be used. But there was also testimony about after he was bound with the flex cups that he basically, and hit on the back of the head with what I presume was the butt of a pistol, that he was slammed to the floor of the steel floor of the armored car. His chin on the floor. And that, and so there was more than just the cut on the back of the head from the butt of the pistol. The, there was more injuries, but even, but I guess it goes back to, again, what did the district judge use? If the district judge would have used, you know, the chin injury was obvious. We never could determine the extent of the chin injury. That it was obvious and painful or somebody that could have gotten medical treatment. But I guess what I'm, what I'm asking, counsel, is, I mean, Judge McNamee heard the testimony at the trial, so he was well aware of the circumstances as to how the robbery was conducted, and it included, with regard to Mr. Hutchinson, some pretty brutal conduct that ultimately ended up injuring him in three places on his body. And so we, you want us to declare, what, that he was clearly erroneous as a, in his findings of fact, that those facts were sufficient to support a finding of bodily injury for the enhancements? Yes, Your Honor, because, again, Judge McNamee never made those determinations that the chin injury or the wrist injury were obvious and painful. If he has said on the record, yes, I think those injuries, the way Mr. Hutchinson testified, that they're obvious, they're significant, and also the chin injury was very significant, then I can even have a different issue. But what District Judge McNamee did was, I'm going to, the injury to the back of the head was obvious and painful, and he made certain conclusions, like there was a blood splatter. There was no evidence there was a blood splatter. The blood was found on Joey Mascariner's, one of the co-defendants, but, on his shirt, but it couldn't come from, because Joey Mascariner's, what he did was he stuffed it all into a duffel bag and disposed of the evidence. There could have been a transfer from the hoods and the rest of the evidence. It didn't have to come from the splatter. We didn't know. The evidence showed that he was one of the robbers hiding in the back of the van that your client let in. That is correct. He's the one who got rid of it, and he's the one who actually did the, he's the one who hit. Who hit Hutchinson. That is correct. Did the judge rely on any of the factual representations in the pre-sentence report? If he did, he didn't state it on the record, Judge. Were there any objections to the statements in the, to the factual statements in the, in the pre-sentence report regarding the injury sustained by Mr. Hutchinson? I can't recall, Judge. I know I objected to body injury. I believe the only basis that they, it was, I believe that the prior, yeah, there wasn't, Mr. Batista pointed out that I did object to paragraph 16, which is about the numbness and about the, oh, I, now my recollection is I believe Michael Hutchinson testified that his wrists were bleeding from the flex ties, but the evidence showed that it wasn't bleeding. So there's a question about the extent of the injury. So what happened, Judge, if, I mean, if you look at the record, I guess to be candid, there may be, you may be able to make a reasonable inference that the judge could have found those. But in this particular case, he didn't. And I think unless he does make those findings and we have the opportunity to contest those issues and actually be able to fully lay out the record, and this case, as the government has conceded, is going to be remanded for, regarding the financial responsibility, we would ask that you remand the whole thing and have the whole factual issue resolved. I was hoping to reserve some time for rebuttal, but unless there are any questions, I'm going to close the hearing. Thank you. May it please the Court. Good morning, Your Honor. My name is Fred Batista. I'm an assistant United States attorney for the District of Arizona out of our Phoenix office. I was a trial attorney in this case and handled this case right from the inception. A few matters to address, the initial matters that the defendant addressed. This particular defendant was given the opportunity to cooperate the day of his arrest. We personally met with him and his defense counsel and basically begged him to consider cooperating because at that point in time, we didn't know who the other four robbers were. He chose to not accept that offer. Additionally, on the eve of trial, at the request of the FBI, I again spoke personally with the defendant and asked him if there was any way that we could resolve this case short of trial so that he would not suffer the consequences that he did in this case. He again redirected that offer. So we ultimately went to trial. Yes, Your Honor. It is a fairly harsh sentence compared to the ones who pleaded, isn't it? Well, Your Honor, two things. One, let's break them out into the two categories, the defendant who cooperated and the three defendants who pled but didn't cooperate. The three defendants who pled but didn't cooperate, they all pled to the Hobbs Act robbery, but the government agreed to dismiss the 924C, the consecutive count. Each one of those three individuals were far less culpable than the defendant in this case in terms of their roles in the investigation. But for the defendant's participation in this case. In terms of their roles in the crime. In the roles of the crime, yes, Your Honor. And also, all three of those robbers accepted responsibility for their conduct. So when we look at the case that's. They said they were far less responsible. They actually committed the robbery. They committed the robbery, Your Honor. But when you look. Were they? Did they have records? The one individual, Your Honor, Mascareno, who got 127 months, he did have a record. But it was, there were relatively minor violations, but it did raise his offense up to the 127 months. But when you look at, like, let's say Villasez, his entire role in the case was basically to help unload the armored car. That's all he did. Matthews, his role was he drove the getaway van, offered up his business as a meeting place, and helped disperse the money. That's all he did. Mascareno, I think. What did they get? Excuse me? What did they get? Approximately, I believe, between $30,000 and $50,000 was disbursed. Oh, excuse me, Your Honor. Mascareno got 127. Villasez got 97. And the third robber, whose name just escaped me. Oh, Matthews got 84 months, Your Honor. And the ones who were really guilty, you say, the primary? The two primary ones would be Moussa, who got. The ones who were guilty the most turned in the others. Only one cooperated, Your Honor. Only one cooperated. Moussa. There was only one cooperator was Mr. Moussa. And what about the other one who was primarily guilty? That's the defendant in this case, Your Honor. This is Mr. Gabor. Only one other was, you said, comparable to him in guilt? That would be Mr. Moussa, Your Honor. And he got 127? No, Mr. Moussa got 84 months. 84 months. Based on his cooperation. That was on the Hobbs Act. For Hobbs Act and the 924C, Your Honor. The Court gave him 7 years. How did they accomplish that? I couldn't figure that out. Your Honor, because. I thought it was mandatory. I thought the 927 was mandatory. It's always mandatory, except the one unique situation where the government makes a motion for a downward departure based on substantial assistance. Based upon the statute and the guidelines, the Court then has the authority to depart down below the statutory minimums under 924C. That's my, I'm aware of that. That's the only way a court can get down below the statutory minimums in the 924C. If it charges him, were they all, would the facts have supported a 920, is it 924? 924C, Your Honor. Would the facts have supported that kind of a charge against any of the others? Oh, yes, Your Honor. All five of them. They were all from the same one gun, right? No, well, there were multiple guns, Your Honor. Mr., what happened in the robbery is the messenger, the victim, goes out to a Home Depot. The defendant, Mr. Gabor, allows two robbers into the vehicle. Musa hides in the front. Mascareno hides in the back. The victim gets in. Mascareno hits the victim from behind with the gun. And then both Mascareno and Musa point guns directly in the face of Hutchinson after he's been struck from behind. So. You say those two are not primarily culpable? Musa and Gabor, Your Honor, who's the defendant. Did Gabor hit him with a gun? No, Your Honor. Mr. Gabor sat at the front seat. But I said the two who pointed the guns and hit him with the guns. Correct. Only one of those you consider primarily. Right. Because Mr. Mascareno, the individual that hit the victim from behind, that was basically his primary role was to subdue the messenger and then help bag up the money for the getaway van. That's pretty much all he did. And that doesn't make him one of the primary? Well, when you look at our brief and you look in terms of what the defendant did in this case, the defendant basically, through his training through the Armored Car Company, came up with the idea of coming up with a scenario where the driver inadvertently let somebody in the vehicle that looks like an armored car employee, told them all about the doors, told them all about the route, told them about the money in the vehicle, set up the armored car vehicle such that it would facilitate the robbery, did many, many things along a period of time that basically facilitated this robbery. And as Mr. Moussa testified, when you look at all the security features of this vehicle, the mirrors, the bulletproof glass, the armor. What do you think he would have gotten if he had pleaded guilty? Well, Your Honor, I think that if he had pled guilty, the government would have agreed to dismiss the 924C. I mean, and then he would have been looking at approximately now under this scenario, approximately 125 months, which would have put him in line with the other defendants. He probably would have gotten less than that because he would have gotten acceptance of responsibility as well. Well, there is a possibility that he would have gotten a little bit less. Excuse me, Your Honor? Probably would have been a little bit less. Yes, Your Honor. But in addition, I mean, he did have a higher role in the offense, whereas the other three that didn't cooperate had a minor role or lesser role. We would have been in the range, though, 125 or something. Yes, Your Honor. He would have been a lot closer. But as the case cited by the government, Caperna, states, when you have individuals that are ultimately convicted of different offenses, it's like apples and oranges. In other words, the three individuals that got the less time, the defendant says, well, he received 17 years. But before you even look at the analysis, you need to carve off the 84 months for the 924C. Well, it's just a little troublesome, not necessarily to a legal point, but because you go to trial, you get an extra 84 months, and you get charged with an extra crime. Well, Your Honor, I think the reality of the situation is this. I understand that that's the way it works. That's the way it works, Your Honor. And in this particular case, you know, we say you don't get punished for going to trial. It's the other people get less. Well, Your Honor, but if you get this, if you get the same sentence whether or not you go to trial or not go to trial, I mean, as the Court well knows, well over 95 percent of our cases plead. And if you eliminate the downside for going to trial, then what? 40, 50, 60, 70, 80, 90 percent of our cases are going to go to trial. Why not go to trial? Then take your shot. Take your shot at this is the second appeal. But you don't get a punishment for going to trial, it seems like. Well, Your Honor, that's the case. Can I just shift your view? You have a minute left. Sure. What's your response to the primary argument here about the bodily injury in him? Well, I think for one thing, this was in deference to Mr. Park. He's not the trial counsel. The evidence was, and the Court saw the evidence, Mr. Mascareno was wearing a shirt. He hit the victim from behind. The Court found that it was a blood spatter. And the blood shown on the shirt was there were little dots of blood. In other words, that blood got there from an impact from being hit behind with such force that the blood spattered on the Mr. Mascareno's shirt. There was no transfer after that because immediately after the guns were put to his head, a hood was put on Mr. Hutchinson with a zip tie, and that hood never came off. So there was no possibility for a transfer because when they – when the robbers left the vehicle, Mr. Hutchinson was still hooded. And with respect to injuries, I would note that the Court – the defendant objected to paragraph 16, which laid out the injuries that were discussed. And the Court did not sustain the defendant's objection. And when the Court talks about injuries, the Court uses the term injuries. It didn't – he didn't limit his statement to just the injury of the head. The Court said several times in the plural, because of the victim's injuries, he was applying the particular enhancement. I see that I've run out of time. Thank you. Thank you, Judge. One dispute, Judge, that I would have would be that Joey Mascareno, who did hit Mr. Hutchinson, played a lot more active role than what the government characterizes his role was in the offense. As to Judge McNamee's finding regarding injuries, if you look at the sentencing transcript, he talks only about the injury to the head. I don't believe, based on what was presented at sentencing phase, that the Biley injury application would apply. Therefore, we'd ask that that enhancement be vacated and the case remanded for resentencing. Thank you. Thank you, Judge. Case can start. It will be submitted.
judges: Reinhardt, Paez, Tallman